STATE OF OHIO (86–4019 & 86–4038) and Ohio Citizens for Responsible Energy, Inc. (86–4037), Petitioners,

v.

NUCLEAR REGULATORY COMMISSION, and United States of America, Respondents,

Cleveland Electric Illuminating Company, Duquesne Light Company, Ohio Edison Company, Pennsylvania Power Company, and Toledo Edison Company, Intervenors.

Nos. 86–4019, 86–4038 and 86–4037.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 3, 1986.
Decided March 17, 1987.

David E. Northrop (argued), Sharon Sigler, Asst. Attys. Gen., Columbus, Ohio, for State of Ohio.

Peter Crane, Office of the Gen. Counsel, Washington, D.C., William H. Briggs (argued), for Nuclear Regulatory Comn.

Jay E. Silberg (argued), Shaw, Pittman, Potts, & Trowbridge, Washington, D.C., Charles F. Clarke, Cleveland, Ohio, for Cleveland Elec. Illuminating Co.

Edwin Meese, II, Atty. Gen., Dirk D. Snel, Martin W. Matzen, Appellate Section, Land & Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., for U.S.

John E. Shoop, Painesville, Ohio, for amicus curiae Lake County.

Dale Baich, Cleveland, Ohio, for Ohio Citizens for Responsible Energy, Inc.

Before ENGEL, JONES and RYAN, Circuit Judges.

RYAN, Circuit Judge.

Petitioners seek to overturn three orders of the Nuclear Regulatory Commission (the NRC):

1. Petitioner State of Ohio appeals an order of the NRC denying leave to intervene in licensing proceedings pertaining to the Perry Nuclear Power Plant (the plant);

2. Petitioner Ohio Citizens for Responsible Energy, Inc. (OCRE) appeals an order of the NRC denying its motion to reopen the record in the plant licensing proceedings; and

3. Both petitioners appeal the NRC's order authorizing the plant's full-power operating license.

The issue is whether the NRC reasonably exercised its discretion in making these determinations. We hold that it did, and affirm all three orders.

**I**

In 1980, intervenor Cleveland Electric Illuminating Company (CEI) and other public utilities applied to the NRC for a license to operate the Perry Nuclear Power Plant on the shore of Lake Erie in Northern Ohio. The NRC granted party status to OCRE and other interested parties in 1981. The State of Ohio did not seek to participate at that time.

Hearings were held pursuant to the Atomic Energy Act, 42 U.S.C. § 2239(a) (1973), in 1983 and 1985. No party to the proceedings raised the issue of the plant's capacity to withstand earthquakes. The adequacy of emergency planning was challenged by Sunflower Alliance, an intervenor in the proceedings, and was ultimately approved by the NRC. The record was closed on May 3, 1985.

On January 31, 1986, an earthquake of magnitude 5.0 on the Richter scale occurred approximately ten miles away from the plant. On February 3, 1986, OCRF filed a motion to reopen the record to consider the capacity of the plant's structures to resist seismic activity of this magnitude. In support of its motion, OCRE submitted a newspaper article reporting that vibratory ground motion at the plant during the earthquake had exceeded the peak acceleration for which the plant had been designed.

The NRC staff studied the available data and determined that, while the earthquake was severe and was different in some respects from the archetype of earthquake motion used in designing the plant structures, the high frequency energy levels that had exceeded the "design spectrum" for ground motion did not raise a serious safety concern. The plant had been designed to withstand earthquakes with magnitudes of 5.3 ± 0.5 because the most severe earthquake in the pertinent geographical zone, the 1937 Anna, Ohio, earthquake, had an estimated magnitude of 5.0–5.3.

The appeal panel to which OCRE's contentions were submitted, recognizing the highly technical nature of the issue, scheduled an exploratory hearing in order to fully consider OCRE's claims. The NRC, however, determined that such a hearing

was not appropriate and, because OCRE had failed to support its motion with evidence sufficient to merit reopening the record, ordered that the motion be denied. OCRE has appealed this denial.

The January, 1986, earthquake also stimulated new concerns on the part of the Governor of Ohio. These concerns were heightened by the April, 1986, nuclear accident at Chernobyl, in the Soviet Union, and eventually focused upon the adequacy of the emergency preparedness plans for Ohio's commercial nuclear reactors. On August 15, 1986, the Governor appointed a cabinet-level task force to review the adequacy of the evacuation plan which had previously been prepared by Ohio authorities with a view to the eventual full-power operation of the plant. On the same day, the Governor informed the NRC that he was withdrawing his support for the plan. He requested that the NRC delay its vote on full-power licensing until after the task force report was complete. The task force was given a due date of December 31, 1986. We have not been advised at this writing whether the report has been completed or, if completed, released.

While maintaining informal communications with the NRC about its concerns and the progress of the task force's investigation, Ohio also sought formal intervention in the proceedings on September 5, 1986, as an "interested state" under 10 C.F.R. § 2.715 (1986). On October 29, Ohio submitted preliminary findings of the task force to the NRC, requesting that full-power licensing be delayed until the report was completed and the emergency plan could be revised accordingly. On October 30, the NRC denied Ohio's motion to intervene. Ohio has appealed this denial.

Meanwhile, the NRC's final vote on the plant's full-power license, originally scheduled for September 4, was stayed by this court at the instance of OCRE, which contended that it had a right to appeal the denial of its motion to reopen the record prior to that vote. On October 14, this court rejected OCRE's petition for review on the ground that the denial was not a final agency order. *Ohio Citizens for Responsible Energy, Inc. v. NRC*, 803 F.2d 258 (6th Cir.1986). Accordingly, the stay was lifted.

On November 7, as the NRC prepared to conduct the vote on full-power licensing, Ohio petitioned this court to review the NRC's denial of Ohio's motion to intervene and also sought an emergency stay of the vote pending review. The vote proceeded, and the license was granted. Ohio and OCRE both sought review in this court of the NRC's final order granting the full-power operating license.

Although the license was issued on November 13, 1986, this court immediately ordered that implementation of full-power operation be stayed pending our review of these appeals. The plant thus continued operating at 5% capacity, as it had before the license was issued, rather than beginning the gradual escalation to 100% capacity authorized by the license.

On November 14, we consolidated and expedited the appeals of Ohio and OCRE. Oral argument was heard on December 3. On December 12, 1986, the five intervenor utilities moved the court to lift the stay, claiming that the "costs of delaying plant operations are accumulating at approximately $2.2 million per day or more than $40 million to date." The motion was opposed by the State of Ohio. We lifted the stay on December 23, 1986, Judge Jones dissenting. An application to the United States Supreme Court by OCRE to stay the mandate of our order lifting the stay was denied on December 31, 1986, in an opinion of Justice Scalia.

## II

OCRE contends that the NRC's refusal to reopen the record in response to its request following the January, 1986, earthquake illustrates two chronic bureaucratic evils: first, the agency's inclination to shut the public out of the decision-making process, confident in the sufficiency of its own knowledge and expertise; and second, the agency's impatience with the pace of the democratic decision-making process im-

posed upon it by statute, which inclines the NRC to dispense with any procedure, however well-founded, that threatens delay.

In this case, these contentions are without merit. The agency proceedings in this case do not suggest an intolerance for public participation on the part of the NRC. The statutory scheme requires hearings to be held only upon those issues interested parties raise before the NRC in a timely manner. In the absence of a request, no hearings need be held at all. 42 U.S.C. § 2239(a)(1). Safety concerns not raised in public hearings must nonetheless be addressed by the NRC staff.

In this case, seismic considerations were not raised by OCRE or any other participant in the public licensing hearings. Accordingly, the NRC staff addressed this issue on its own in accordance with the NRC's Seismic and Geologic Siting Criteria for Nuclear Power Plants, 10 C.F.R. Part 1, App. A. Thus, the NRC's reluctance to reopen the record on this issue does not imply either a high-handed disdain for public comment or a lack of concern for the seriousness of the issue. Rather, it indicates only that the public comment period was closed, and that the NRC had not been convinced that OCRE had a significant contribution to make to further staff analysis.

■ True, new data, in the form of an unexpected earthquake, had appeared since the closing of the record. However, in the absence of some showing that OCRE could assist materially in the analysis of that new data, there is no reason why that event, of itself, would require the record to be reopened. One of the purposes of the NRC's discretionary option to refuse reopening the record is to assure that the party who would reopen the record offers such material assistance rather than a mere continuation or rehash of the process ostensibly terminated when the record was closed initially.

"Under Commission practice, reopening is required when *new evidence* is shown to be *timely, safety significant,* and sufficiently *material* to have changed the result initially taken." *San Luis Obispo Mothers for Peace v. NRC,* 751 F.2d 1287, 1318

(D.C.Cir.1984) (emphasis in original), *aff'd,* 789 F.2d 26 (D.C.Cir.1986) (en banc). Here, OCRE's motion was conceded to be timely, but the NRC held that OCRE had not shown safety significance.

■ At the time of its motion, OCRE submitted only a newspaper article in support of its claims. Even if the NRC had permitted the appeal panel to proceed with its exploratory hearing, OCRE planned to offer no information or analysis of its own, but intended instead to conduct a cross-examination of witnesses presented by CEI and the NRC staff. Furthermore, OCRE had conceded that the January earthquake did little or no damage to the plant and "that the high frequency exceedances of the SSE [Safe Shutdown Earthquake] design acceleration recorded in the January 31, 1986 earthquake do not have engineering significance." Instead, OCRE sought to introduce a new theory, based on the improbable contention that a discoverable "capable fault" (as defined in 10 C.F.R. Part 1, App. A, III(g)) caused the earthquake, even though such faults have rarely been identified east of the Rocky Mountains, and that the NRC staff had accordingly applied the wrong standards in making its seismic calculations.

In the face of this claim, palpably lacking in proof, the NRC staff opposed an extensive study purporting to answer OCRE's contentions in an exhaustive and technical manner.

Although we recognize the possibility that the pace of events and the implications of new information and developments may at times outstrip the relatively fixed agenda of an entrenched bureaucracy, and while we would not equate the absence of hard data in a case such as this with the absence of a threat to public safety, the fact remains that OCRE has made no showing that it has anything to contribute to the analysis of the plant's seismic security and only the barest of allegations that the January, 1986, earthquake has undermined the technical premises of the plant's structural design. Despite the appeal panel's willingness to give OCRE an opportunity to flesh out these allegations, we do not consider

the NRC's decision to dispense with that opportunity necessarily to indicate unseemly haste.

*Baltimore Gas and Electric Co. v. Natural Resources Defense Council, Inc.*, 462 U.S. 87, 103 S.Ct. 2246, 76 L.Ed.2d 437 (1983), involved a challenge to the NRC's approach to evaluating the environmental impact of the storage of certain nuclear wastes. In this context, the Court observed that

"a reviewing court must remember that the Commission is making predictions, within its area of special expertise, at the frontiers of science. When examining this kind of scientific determination, as opposed to simple findings of fact, a reviewing court must generally be at its most deferential."

*Id.* at 103, 103 S.Ct. at 2255. Arguably, somewhat less deference is appropriate here, but the fact remains that our role in reviewing NRC denials of requests to reopen the record is quite limited:

"Where as here the agency has taken final action on a matter that is peculiarily within its realm of expertise, we will not require the agency to reopen its proceedings except upon a clear showing of abuse of discretion or of extraordinary circumstances."

*Mobil Oil Corp. v. ICC*, 685 F.2d 624, 632 (D.C.Cir.1982).

■ A failure of the NRC to follow its own guidelines would constitute an abuse of discretion, *see San Luis Obispo Mothers for Peace v. NRC*, 751 F.2d 1287, 1318 (D.C.Cir.1984), *aff'd*, 789 F.2d 26 (D.C.Cir. 1986) (en banc), but the NRC's action here was expressly premised upon a well-founded conclusion that OCRE had failed to show that new data resulting from the January, 1986, earthquake were safety significant. Evidently, OCRE was surprised by the NRC's procedure of interjecting itself into the reopening petition process and cancelling the exploratory hearing scheduled by the appeals panel. However, so long as the decision to reopen is committed to the NRC's discretion, no intervenor can claim an entitlement to an exploratory hearing the NRC reasonably deems to be unnecessary.

## III

NRC regulations delegate responsibility for developing off-site emergency plans to state and local governments. 10 C.F.R. § 50.47. These regulations provide in part:

"(a)(1) Except as provided in paragraph (d) of this section, no operating license for a nuclear power reactor will be issued unless a finding is made by NRC that there is reasonable assurance that adequate protective measures can and will be taken in the event of a radiological emergency.

"(2) The NRC will base its finding on a review of the Federal Emergency Management Agency [FEMA] findings and determinations as to whether State and local emergency plans are adequate and whether there is reasonable assurance that they can be implemented, and on the NRC assessment as to whether the applicant's onsite emergency plans are adequate and whether there is reasonable assurance that they can be implemented."

The emergency plan for the Perry plant was developed by the State of Ohio, which now contends that the plan is seriously inadequate.

■ Ohio seeks to intervene in the plant's licensing proceedings, citing 10 C.F.R. § 2.715(c), which provides in part:

"The presiding officer will afford representatives of an interested State, county, municipality, and/or agencies thereof, a reasonable opportunity to participate and to introduce evidence, interrogate witnesses, and advise the Commission without requiring the representative to take a position with respect to the issue."

This regulation preserves the right of a state to participate in licensing hearings, but does not address the state's rights once the hearings have been completed and the record closed. Thus, the state's belated request to intervene must be considered by this court in light of the limited "abuse of discretion" standard of review otherwise

applicable to requests to reopen the record, as set forth above.

■ Ohio contends, however, that the NRC has abused its discretion in denying it leave to intervene. Ohio claims it is not an opponent of nuclear power, and has no intention of holding up plant operations indefinitely. On the contrary, Ohio asked only for a delay in full-power operation until the end of 1986 so that the emergency plan could be fully studied and revisions could be undertaken. Ohio's request was not unreasonable. This court takes judicial notice of the fact that the stays we have imposed have come very close to rendering this issue moot despite our best efforts to resolve this matter expeditiously.

■ We recognize also that Ohio's responsibility for the safety of its inhabitants is unquestionably deserving of this court's consideration. In view of this responsibility, the untimeliness of Ohio's action and its failure to participate in the earlier public hearings would be entirely insufficient as grounds for NRC action dispensing with Ohio's concerns. The NRC, however, has neither ignored Ohio's contentions nor acted unreasonably in denying leave to intervene.

First, we note that Ohio's responsibility is entirely with *off-site* emergency preparations. These preparations may proceed apace regardless of the operational status of the plant.

Second, while the regulatory scheme was clearly designed to prevent full-power licensing until the NRC finds that there is "reasonable assurance" that the emergency plan is adequate, the NRC has in fact made a finding to this effect. Many of Ohio's more specific concerns were raised in the public hearings by intervenor Sunflower Alliance. Ohio's newfound misgivings are troubling, but do not necessarily undercut the reliability of the NRC's finding.

Finally, issuance of a license does not preclude Ohio from proceeding with research, oversight, and revisions in any portions of the emergency plan perceived as inadequate. Furthermore, 10 C.F.R. § 2.206 gives any person the right to institute a proceeding to "modify, suspend or revoke a license." While we recognize that it may be more difficult to shut a plant down than to prevent initial licensing, the procedure provided for by § 2.206 appears to provide an adequate remedy for any grave safety shortcomings Ohio may henceforth discover and document.

These considerations persuade us that the NRC acted reasonably in denying Ohio's request to intervene in the full-power licensing proceedings.

### IV

■ Aside from the allegations contained in OCRE's petition to reopen the record and Ohio's petition for leave to intervene, we are presented with no basis upon which the NRC's decision granting the full-power operating license should be reversed. Accordingly, petitioners' objections to this decision must also be rejected.

### V

Our treatment of the issues raised on this appeal is conditioned by the very limited role Congress has assigned to the courts in the statutory scheme regulating the construction and operation of commercial nuclear power plants. As the Supreme Court has observed:

"We are acutely aware that the extent to which this Nation should rely on nuclear power as a source of energy is an important and sensitive issue. Much of the debate focuses on whether development of nuclear generation facilities should proceed in the face of uncertainties about their long-term effects on the environment. Resolution of these fundamental policy questions lies, however, with Congress and the agencies to which Congress has delegated authority, as well as with state legislatures and, ultimately, the populace as a whole. Congress has assigned the courts only the limited, albeit important, task of reviewing agency action to determine whether the agency conformed with controlling statutes. As we emphasized in our earlier encounter with these very proceedings, '[a]dminis-

trative decisions should be set aside in this context, as in every other, only for substantial procedural or substantive reasons as mandated by statute ..., not simply because the court is unhappy with the result reached.' *Vermont Yankee,* 435 US, [519], at 558, 55 L Ed 2d 460, 98 S Ct 1197 [1978]."

*Baltimore Gas and Electric Co. v. Natural Resources Defense Council, Inc.,* 462 U.S. 87, 97, 103 S.Ct. 2246, 2252, 76 L.Ed.2d 437 (1983). The NRC acted within the confines of its statutory discretion in making the three decisions challenged by these appeals. This court is therefore required to uphold those decisions.

## VI

The orders of the NRC appealed from are AFFIRMED.

NATHANIEL R. JONES, Circuit Judge, concurring.

The opinion of the court in this case sets out as good a basis for affirming the Nuclear Regulatory Commission's orders as can be done. Because I am persuaded that the scope of judicial review delineated by the Supreme Court in *Baltimore Gas & Electric Co. v. Natural Resources Defense Council, Inc.,* 462 U.S. 87, 103 S.Ct. 2246, 76 L.Ed.2d 437 (1983), and *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978), is extremely narrow, I concur in today's result. Nonetheless, I am sufficiently alarmed by the events that gave rise to the instant proceedings to write separately.

The court's opinion summarizes OCRE's description of the NRC's "bureaucratic evils" as:

first, the agency's inclination to shut the public out of the decision-making process, confident in the sufficiency of its own knowledge and expertise; and second, the agency's impatience with the pace of the democratic decision-making process imposed upon it by statute, which inclines the NRC to dispense with any procedure, however well-founded, that threatens delay.

The majority of this panel finds no merit in such a description. However, if the proceedings in this case are any indication of the Commission's standard practice, I think that the description is quite accurate. From my perspective, there is no better way to characterize the Commission's *sua sponte* order vacating the Appeal Panel's order scheduling an exploratory mini-hearing. The purpose of that mini-hearing was to determine whether the unexpected and uncharacteristically strong earthquake raised significant safety issues warranting a reopening of the record.

The Commission's treatment of the State of Ohio's concerns with the adequacy of the off-site emergency preparedness plan is even more disconcerting. The NRC's argument in support of its denial of the State's motion to intervene boils down to the following: While it is not too late for the State to make improvements in the existing off-site emergency plan that it fears may be seriously inadequate in certain respects, it is in fact too late for the State to guarantee the safety of its citizenry by temporarily delaying the issuance of Perry's full-power license pending the completion of its formal review. Granted, the Commission is not legally *required* to further stay the plant's full-power operation since it has satisfied itself that the existing off-site plan is adequate. However, that is not really the point. Where, as here, the State has expressed bona fide concerns for the safety of its people and has in good faith undertaken affirmative investigatory measures, it is at best patronizing for the Commission to turn a deaf ear to the State's plea for a brief delay. While the Nuclear Regulatory Commission may be secure in its belief that it is the ultimate protector of the American people generally, and of the people of Ohio specifically, from the hazards of nuclear power generation, I do not think that Congress ever intended for the Commission to have this type of one-sided relationship with a sovereign State over a serious matter of local health and safety.